Estates of John Lawrence and Ann Appleton, Deceased. Appeal of The Mutual Loan, Savings and Building Association of Haddonfield, N. J.

*Mortgage—Jurisdiction of common pleas—Trustees—Execution of mortgage.*

Where trustees under a will mortgaged the real estate under an order of court, for the purpose of paying a prior lien and repairing and improving other portions of the estate, and a judgment, entered upon the bond accompanying the mortgage, is opened on petition of the trustees and they

186 ESTATES OF LAWRENCE et al. LOAN ASSN.'S APP.

Syllabus—Statement of Facts. [169 Pa.

are let into a defense, and a trial is had upon the merits, the court of common pleas has jurisdiction to decide everything at issue, and defendants have no standing in the orphans' court to enjoin a sale of the mortgaged premises upon a petition similar to that previously presented in the common pleas for opening the judgment. If there was error in the trial in the common pleas, the remedy was by appeal.

Where trustees are empowered to mortgage land and, in the execution of the bond and mortgage, they sign their individual names without adding their official title, the loan is to be regarded as having been made to the trustees in their official capacity and not to them as individuals; and neither the trust estate which was benefited by the loan nor the sureties on the bond can avoid their liability on that ground.

Argued Jan. 17, 1895. Appeal No. 100, July T., 1894, by The Mutual Loan, Savings and Building Association of Haddonfield, N. J., from the decree of the orphans' court of the county of Philadelphia, entered on the 12th day of May, 1894, as of April T., No. 53, in the matter of the estates of John Lawrence and Ann Appleton, deceased, setting aside the report of the master. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Petition for injunction to restrain sale of real estate. Before ASHMAN, J.

The petition of the Union Trust Company, trustee under the will of Ann Appleton, deceased, sets forth, substantially: That on the twenty-first day of June, 1889, the petitioner was appointed by this court trustee under the will of Ann Appleton; that said Ann Appleton by said will executed a power of appointment as to certain real property previously held in trust for her under the will of John Lawrence; that said John Lawrence died in March, 1847, seized, inter alia, of a piece of ground, No. 221 Arch street; that by his last will he bequeathed the residue of his estate, including said property, to certain trustees in trust for the use of his daughter, Ann Appleton, during her life, and after her death to such persons as the said Ann Appleton should by her will appoint; that said Ann Appleton died in March, 1883, leaving a last will, admitted to probate in Philadelphia county, whereby she appointed to her son, George W. Appleton, inter alia, the property No. 221 Arch street, devised in trust as aforesaid, during his life, and after his death to the Philadelphia Trust, Safe Deposit and Insur-

ESTATES OF LAWRENCE et al.   LOAN ASSN.'S APP.  187

1895.]                    Statement of Facts.

ance Company, in trust to manage the same, collect the income, during the lifetime of her last surviving child, all of whom were living at the death of John Lawrence, and to pay out of the proceeds thereof certain legacies during the lifetime of said survivor, and after the death of such survivor to transfer the corpus of the property to the New York Baptist Union for ministerial education; that the said trust still subsists.

That in August, 1860, George W. Appleton and Henry Pomerene, by order of this court, became trustees of the estate of said John Lawrence, deceased; that they thereupon applied to this court for leave to mortgage certain premises belonging to the trust estate, situated at the northwest corner of Pine and Quince streets, averring in said petition that certain premises, being a portion of the property of said estate, situate on the north side of Arch street, between Second and Third streets, was incumbered by a mortgage for the sum of $1,500, the principal of which was due and demanded by the mortgagee, and that another property of said trust estate on the east side of Second street, between Market street and Chestnut street, required alteration and enlargement; that the court granted the petition.

That on the eighth day of October, 1870, said trustees presented to the court a further petition setting forth that they had been unable to obtain a loan for the requisite amount upon mortgage of the premises at the corner of Pine and Quince streets; that Ann Appleton, their cestui que trust for life, in protection of said premises upon Arch street, had paid off said mortgage of $1,500, and the trustees prayed that they be authorized to borrow upon the premises on the north side of Arch street, between Second and Third streets—being No. 221—a sum not exceeding $5,000; that this petition was granted, and said trustees authorized to make such mortgage, apply the proceeds thereof to the repayment to Ann Appleton of the moneys advanced by her, and the alteration of the premises on Second street; that on the 24th of October, 1870, William C. Flanigen was approved as surety for said trustees under the latter order; that upon the same day George W. Appleton and Henry Pomerene and William C. Flanigen entered into a bond conditioned in proper form for the due compliance by said trustees with said order; that William C. Flanigen afterwards died, leaving a last will, duly probated in Philadelphia county.

That on the twenty-fourth day of February, 1872, George W. Appleton and Henry Pomerene, desiring to secure certain loans made by the Odd Fellows' Building and Loan Association of Camden, to one Samuel Appleton and said George W. Appleton, and acting by apparent color of authority under said order of this court rendered Oct. 8, 1870, but in fact proceeding for the private advantage of said George W. Appleton and Samuel Appleton in order that they might procure funds with which to conduct a certain speculative land enterprise, executed on the twenty-fourth day of February, 1874, to the Odd Fellows' Building and Loan Association of Camden, a bond conditioned for the payment of " the sum of $5,000, together with six per cent interest thereon, at such times and in such places and in such instalments as is now or may hereafter be provided for and required by the constitution and by-laws of the said ' Odd Fellows' Building and Loan Association of Camden,' " and executed and delivered to the said obligee a mortgage of even date with the said bond to secure the payment thereof according to its terms; that said bond and mortgage, though containing a recital of the trusteeship of the obligors, were signed by the said George W. Appleton and Henry Pomerene in their private names, and not as trustees; that the moneys loaned by the said Odd Fellows' Building and Loan Association to said Samuel Appleton and George W. Appleton did not aggregate but $4,445. That the nominal amount of said debt of Samuel and George W. Appleton was paid about 1876, by the maturity of a certain series of stock in said building association owned by the said George W. and Samuel Appleton, and which had been pledged by them to secure the loan aforesaid, whereby the said mortgage was paid, and the authority for the issuing of such mortgage, if any such authority there had been, became exhausted and absolutely expired. That the said Samuel Appleton and George W. Appleton and the said Henry Pomerene joined to preserve in the record the outward appearance of continuing validity, and to that end abstained from causing satisfaction to be entered on the record, so that the same might serve ostensibly as additional security for later loans made to the said Samuel and George W. Appleton by the said association after the date of the above particularized loans, to wit, in the month of August, 1875, which later loans were made to them in their private capacity.

ESTATES OF LAWRENCE et al.  LOAN ASSN.'S APP. 189

1895.]                    Statement of Facts.

That on March 1, 1881, the Odd Fellows' Building and Loan Association of Camden issued a writ of scire facias upon said mortgage, and caused said writ to be served upon said George W. Appleton and Henry Pomerene as trustees; that an appearance was entered in behalf of said trust estate, and an affidavit of defense filed setting up the principal facts above stated; that thereupon said writ of scire facias was discontinued, and judgment was entered up as of June term, 1881, No. 438, in the court of common pleas, No. 2, upon the bond secured by the said mortgage.

That prior to the entering of judgment upon said bond Samuel Appleton had fully paid to the said Odd Fellows' Building and Loan Association all debts by him owing thereto, for which the said mortgage was security.

That after the suit had been brought upon said bond accompanying the said mortgage, George W. Appleton, who was indebted to the said Odd Fellows' Building and Loan Association in the sum of $2,000, and being pressed to make payment of said amount by it, applied to the Mutual Loan, Savings and Building Association of Haddonfield for a loan in that amount, offering as security (1) an assignment of the said mortgage made to the Odd Fellows' Building Association; (2) an assignment of a certain legacy to him by the will of Ann Appleton; (3) a policy of insurance for $1,000 upon his life; that the application was accepted by the said Building Association of Haddonfield, and the sum of $2,000 by them paid to the said Odd Fellows' Building and Loan Association, and the latter association assigned to the Mutual Loan, Savings and Building Association of Haddonfield the said bond and mortgage, according to the offer of George W. Appleton. That George W. Appleton died Dec. 1, 1886. The Philadelphia Trust, Safe Deposit and Insurance Company renounced, as successor in the trust, and the Union Trust Company, as before stated, was appointed instead.

That on the tenth day of June, 1887, a judgment entered on said mortgage bond was marked to the use of the Mutual Loan, Savings and Building Association of Haddonfield.

That on June 10, 1887, an alias writ of venditioni exponas was issued on the said judgment. The original writ had issued July 7, 1881, and had been stayed.

190 ESTATES OF LAWRENCE et al. LOAN ASSN.'S APP.

Statement of Facts.                    [169 Pa.

That on June 24, 1887, Henry Pomerene, as surviving trustee of the estate of John Lawrence, deceased, obtained a rule to show cause why judgment entered on the said bond should not be opened, and the defendants let into a defense; that the court of common pleas made absolute this rule on the terms that the defense should be limited to the following issue: " Whether George W. Appleton and Henry Pomerene, trustees, etc., the obligors in the bond in suit, fraudulently misappropriated the money obtained thereon; and whether the Odd Fellows' Building and Loan Association of Camden, N. J., knew at the time it loaned its money on the said bond that the said money was to be misappropriated."

That on Nov. 8, 1890, by permission of said court of common pleas, this petitioner, as trustee under the will of Ann Appleton, was allowed to intervene as defendant in said proceeding; and thereupon applied to said court for an enlargement of the issue thus before limited, so that the same should permit the offering of evidence to the point: " Has the bond in suit been satisfied as to all or some of the interests involved in the cause;" that this application was refused by said court.

That on Nov. 17, 1890, said issue came to trial, and verdict was rendered in favor of the plaintiff. That a new trial was refused, and final judgment entered upon the verdict; that a writ of venditioni exponas was thereupon issued, and the sheriff advertised the said trust premises for sale as upon a judgment obtained against the trust estate by the plaintiff, on Monday, June 6, 1892.

The petition further sets forth that owing to the decision of the court of common pleas in the proceedings heretofore recited, the petitioner had no adequate remedy at law, and that the said property over which your honorable court has jurisdiction will be greatly prejudiced in law and equity, and complainant prayed:

(1) A writ of injunction against the Odd Fellows' Building and Loan Association of Camden, the Mutual Loan, Savings and Building Association of Haddonfield, and Horatio P. Connell, sheriff, restraining them from making any sale of the said premises.   (2) That the Odd Fellows' Building and Loan Association of Camden and the Mutual Loan, Savings and Building Association of Haddonfield forthwith satisfy of record the

mortgage to the former association, or that the court decree the same to have been null and void, or to have been fully paid. (3) That if the court should determine that the amount of said bond and mortgage, with interest and costs, is owing from said trust estate, the estate of the said George W. Appleton and Henry Pomerene, and the said William C. Flanigen, deceased, be ordered to pay to the said Mutual Loan, Savings and Building Association of Haddonfield the amount of such principal, with interest and costs as may be due, (4) and general relief.

To this petition no answer was filed by the said sheriff of Philadelphia county, or the Odd Fellows' Building and Loan Association of Camden.

An answer was filed by William A. Flanigen, acknowledging the giving of the bond by said William C. Flanigen, which was recited in the petition of the Union Trust Company, and suggesting that Lucille Flanigen was a co-executor of the estate of William C. Flanigen, deceased.

It was further alleged in said answer that George W. Appleton and Henry Pomerene, the trustees under the will of John Lawrence, never executed the mortgage authorized, or in anywise acted under the several orders of the orphans' court of Philadelphia county, set forth in said petition and under which the bond given by William C. Flanigen was executed; that the bonds and mortgages by them set forth in the sixth paragraph of the petition were not made in pursuance of the said orders of court, but were made by said trustees as individuals to secure their antecedent individual indebtedness. That it does not appear by said petition that the trustees under the will of John Lawrence had filed any account, or that any account had been lawfully stated against them, whereby the estate of William C. Flanigen, by reason of said bond, became liable to the petitioners in any sum whatever; that proceedings to a final decree must be taken against said trustees before the surety can be held responsible; that all right of action to proceed against the estate of William C. Flanigen, under the said bond, is barred by the statute of limitations.

The separate answer of the Mutual Loan, Savings and Building Association of Haddonfield set forth that it purchased from the Odd Fellows' Building and Loan Association of Camden, for the purposes of investment, the bond and mortgage in the

192 ESTATES OF LAWRENCE et al. LOAN ASSN.'S APP.

Statement of Facts. [169 Pa.

petition described for the sum of $2,000, and took an assignment on the twenty-fifth day of January, 1884, and attached copies of said bond and mortgage; that the assignment was not taken by way of collateral security for a loan made by it to George W. Appleton, but was taken by it in the course of business for the consideration aforesaid; that it had no relation, direct or indirect, to the alleged personal accounts of Samuel Appleton, or either of them; that it had been judicially determined in the court of common pleas, No. 2, of Philadelphia county, in the proceeding to which the petitioner was a party, that the said Odd Fellows' Building and Loan Association of Camden did not know at the time it loaned its money on the said bond, secured by the said mortgage, that the said money was to be misappropriated; and that George W. Appleton and Henry Pomerene, trustees, the obligors in the bond in suit, did not misappropriate the moneys obtained thereon; and this determination was reached on the motion of the surviving trustee under the will of Ann Appleton, deceased, defendant in said issues, and a trial of the issues was had in the said court between the petitioner then of record, as trustee, and this respondent. That at the time of said investment it had no knowledge of the several matters of fact alleged in the petition by way of bar to its recovery, nor did they know of the same until after the purchase aforesaid; that all and several the complaints, charges, matters, and things in said petition averred as and for grounds of relief were fully exhibited, considered, determined, and adjudged in the said proceedings in the court of common pleas hereinbefore narrated, whereby the petitioner has been barred by the said proceeding herein.

The answer further suggests that the will of said Ann Appleton in the petition referred to was not operative, as the execution of a power vested in her by the will of her father, John Lawrence, but was, on the contrary, operative as devise of her real estate, which at her death she owned in fee, free, clear, and discharged of all trusts; that as Ann Appleton was alone entitled to an accounting of the said moneys raised upon the said mortgage, and as her estate passed under the will subject to the trust-making the mortgage, to the making of which she had been a party, the petitioner is not answerable to its cestuis que trustent with respect to the lien of the said judgment,

ESTATES OF LAWRENCE et al. LOAN ASSN.'S APP. 193

1895.]          Statement of Facts—Master's Report.

is not in a position to deny the validity and effect thereof, and the pretense of an equity is unfounded. That the said petition is substantially an appeal from the court of common pleas, No. 2, of competent jurisdiction in the premises to this court, and an attempt on the part of the petitioner to secure from this court a review and reversal of the judgment of the said court of common pleas.

That an appeal could be taken from said judgment entered in the court of common pleas, and that the petitioner has a remedy at law against the estate of William C. Flanigen, deceased.

The case was referred to J. Levering Jones, Esq., as master, who reported as follows :

" John Lawrence died in March, 1847, seized in fee of a lot of ground, No. 221 Arch street. He left a will probated in Philadelphia, devising the residuary portion of his estate, which included the property mentioned, to trustees for the use of his daughter, Ann Appleton, during her life, and after her death to such persons as she might by will appoint, and, in default of such appointment, to his grandchildren and issue of any deceased.

" In June, 1870, George W. Appleton and Henry Pomerene, who had been substituted in place of those named in the will of John Lawrence, applied to this court for leave to mortgage, in a sum not exceeding $5,000, property belonging to said trust estate, Nos. 1127–1129 Pine street. The reason for said application was stated in the petition to be that the property 221 Arch street was incumbered with a mortgage of $1,500, which was due and had been demanded, and that other property belonging to said trust estate, on the east side of Second street, between Market and Chestnut streets, required alteration and enlargement. This petition was granted, and an order for the entry of security made. No action was taken by the trustees under this order.

" On Oct. 8, 1870, the same trustees presented a further petition, wherein they stated that they had been unable to obtain a loan for the requisite amount upon the premises 1127–1129 Pine street, and that Ann Appleton, in protection of the said premises, No. 221 Arch street, had paid off the mortgage. The trustee, therefore, asked to be authorized to borrow upon

194 ESTATES OF LAWRENCE et al. LOAN ASSN.'S APP.

Master's Report.                              [169 Pa.

mortgage of the premises No. 221 Arch street a sum.not exceeding $5,000. Ann Appleton, in an answer to this petition, confirmed the facts of the petition, and asked that the same be granted. The petition was granted, and George W. Appleton and Henry Pomerene, trustees, authorized to make such mortgage and apply the proceeds to the repayment of Ann Appleton of the moneys advanced by her in paying off the mortgage of $1,500, and to the alteration of the premises on Second street.

"On Oct. 24, 1870, William C. Flanigen was duly approved as surety for the said trustees under the latter order.

"William C. Flanigen subsequently died. The executors of his last will and testament are William A. and Lucille Flanigen.

"On Feb. 24, 1872, George W. Appleton and Henry Pomerene executed a mortgage in the sum of $5,000 to the Odd Fellows' Building and Loan Association of Camden, on the premises 221 Arch street. They signed the mortgage without the word 'trustee' appended to either of their names. In the clause relating to the parties to the instrument they are entitled 'trustees under the will of John Lawrence, deceased,' and there is a recital that they, as trustees, executed a certain obligation, or writing obligatory, bearing even date therewith, which is 'conditioned for the payment of $5,000, with six per cent interest per annum, at such time and at such places and in such installments as is now or may hereafter be provided for and required by the constitution and by-laws of the said 'Odd Fellows' Building and Loan Association of Camden.'

"Another recital declares the probate of the will of ·John Lawrence and its provisions. The covenants throughout the mortgage are made by George W. Appleton and Henry Pomerene, as trustees.

"The parties to the bond accompanying the mortgage are George W. Appleton and Henry Pomerene. The covenant for payment was by them as trustees, but the bond was executed by them individually, without having the word 'trustees' appended to their names.

"Between Feb. 26, 1872, and Aug. 14, 1872, George W. Appleton borrowed and received from the said association at least $8,701.

ESTATES OF LAWRENCE et al. LOAN ASSN.'S APP. 195

1895.]                            .Master's Report.

" About the same period Samuel Appleton, a brother of George W. Appleton, borrowed about $2,000 from the said association.

" A portion of the above amount borrowed by George W. Appleton—probably between $4,000 and $5,000—he obtained from said association upon the security of the said bond and mortgage. Upon the books of the association he was dealt with individually and not as trustee.

" Indeed, there was no loan made to him or Henry Pomerene in 1872, or at any other time by the association, as trustee of the estate of John Lawrence, deceased.

" These loans were subsequently reduced in amount, but it does not appear by the books of the association that any final settlement was ever made with George W. Appleton by which it was agreed between the association and himself that the amount of money loaned him upon said bond and mortgage of $5,000 had been fully paid.

" It is clear he had repaid to the association before 1880 a considerable portion of the money borrowed by him in 1872 and subsequently, but in 1880 he appears to be still indebted in a considerable sum to the association, which they pressed him to pay, and to enforce the recovery of the balance due it the association entered up the bond accompanying the mortgage aforesaid, and thereupon judgment was entered as of June term, 1881, No. 438, in the court of common pleas No. 2. This proceeding was against George W. Appleton and Henry Pomerene, trustees under the will of John Lawrence, deceased.

" A writ of venditioni exponas issued upon said judgment July 2, 1881. This writ was stayed, and no further proceedings taken at that time.

" The use to which George W. Appleton applied the whole of the money originally received by him on said bond and mortgage is not clearly established. There is no evidence to show that at least $1,500 of it was not applied to the repayment to Ann Appleton of the money advanced by her in paying off the mortgage of $1,500, which had been on the property No. 221 Arch street, as directed in the order of court. There is no adequate evidence to show that a portion, or even the whole of said money was not applied to the alteration and improvement of the property belonging to the trust estate on Second street,

196 ESTATES OF LAWRENCE et al. LOAN ASSN.'S APP.

Master's Report. [169 Pa.

between Market and Chestnut streets, as also directed in the order of court, under the authority of which said bond and mortgage were executed.

" There is evidence that some of the money borrowed from the Odd Fellows' Building and Loan Association was invested by George W. Appleton for the benefit of himself and his brother, Samuel Appleton, in the purchase of real estate, or in the improvement of the same, in which they were interested in Haddonfield. This evidence is neither clear nor exact as to when it was invested, how much was invested, and whether it was the trust funds that were so invested. The testimony in reference to the use of said trust money is entirely insufficient to show its misappropriation.

" On the 25th day of January, 1884, the Mutual Loan, Savings and Building Association of Haddonfield purchased and took an assignment from the Odd Fellows' Building and Loan Association of the said bond and mortgage executed by George W. Appleton and Henry Pomerene, trustees as aforesaid, for the sum of $2,000, which amount it was agreed between the said association and George W. Appleton was at that time owing the said association upon said security.

" The assignment was made with the approval of the said George W. Appleton, who thereupon became a member of the said Mutual Loan, Savings and Building Association of Haddonfield. This purchase was made without any knowledge on the part of the Mutual Loan, Savings and Building Association that there had been any defense made to the mortgage, or that there was any claim by any one that the said securities were not valid and binding in their hands.

" The check for said bond and mortgage was paid directly by the treasurer of the Mutual Loan, Savings and Building Association to the treasurer of the Odd Fellows' Building and Loan Association. No direct loan was made by the Mutual Loan, Savings and Building Association to George W. Appleton on said bond and mortgage. The association was a direct purchaser of the mortgage for $2,000, with the evident understanding, as shown by subsequent events, that they did not claim any interest in the bond and mortgage beyond that amount.

" Ann Appleton died in March, 1883. She left a last will, probated in Philadelphia, whereby she appointed to her son,

ESTATES OF LAWRENCE et al. LOAN ASSN.'S APP. 197

1895.] Master's Report.

George W. Appleton, inter alia, the property which had been devised in trust as aforesaid during his life, and after his death to The Philadelphia Trust, Safe Deposit and Insurance Company in trust to manage the same, collect the income therefrom during the lifetime of her last surviving child, and to pay out of the proceeds thereof certain legacies during the lifetime of such survivor, and after the death of such survivor to transfer the corpus of the said property as therein designated. The said trust still subsists.

"George W. Appleton died Dec. 1, 1886, and The Philadelphia Trust, Safe Deposit and Insurance Company renounced the said trust. The Union Trust Company was duly constituted trustee in place thereof.

"On June 10, 1887, the judgment entered on the bond under consideration was marked to the use of the Mutual Loan, Savings and Building Association of Haddonfield. On the same day an alias writ of venditioni exponas was duly issued against the premises No. 221 Arch street.

"On June 24, 1887, Henry Pomerene, surviving trustee, obtained from court a rule to show cause why the judgment entered on the bond should not be opened. This rule, after argument, was made absolute upon the following terms, that the defense to be heard should be limited to the following issue: ' Whether George W. Appleton and Henry Pomerene, trustees, etc., the obligors of the bond in suit, fraudulently misappropriated the money obtained therein, and whether the Odd Fellows' Building and Loan Association of Camden, N. J., knew at the time it loaned its money on the said bond that the said money was to be misappropriated.'

"On Nov. 8, 1890, the present petitioner, the Union Trust Company, was allowed to intervene and become a party to the proceeding. It subsequently asked for an enlargement of the issue limited as before stated, which the court refused.

"On Nov. 17, 1890, the said issue came to a trial, and verdict was rendered in favor of the plaintiff. A new trial was refused, a writ of fi. fa., and subsequently a writ of venditioni exponas was issued, and the sheriff proceeded to advertise the premises for sale on June 6, 1892.

"This petition was then filed and a preliminary injunction granted.

198 ESTATES OF LAWRENCE et al. LOAN ASSN.'S APP.

Master's Report. [169 Pa.

" After filing of answers a motion was made for the dissolution of the injunction. Upon argument the motion was refused and the injunction continued. The cause was then referred to the master to take evidence upon the pleadings and report his findings to the court.

" Three questions present themselves for the consideration of the master:

" 1. Is the estate of Ann Appleton, deceased, indebted in the principal sum of $2,000 on the bond and mortgage held by the Mutual Loan, Savings and Building Association of Haddonfield, N. J., or, in other words, did the estate of Ann Appleton ever receive that amount of money upon loan secured by said bond and mortgage, which sum still remains unpaid?

" 2. Does the circumstance that the word 'trustee' was not appended to the names of George W. Appleton and Henry Pomerene, who executed the bond and mortgage in controversy, under the authority of the orphans' court to execute a bond and mortgage to secure a loan of a sum not exceeding $5,000, destroy the validity of the same, if it appears that at least the sum of $2,000, the balance of the principal of said loan unpaid, has been enjoyed by the estate of Ann Appleton, deceased?

" 3. Is there equitable ground for interference with the writ of execution issued from the court of common pleas?

" It would be possible to dispose of this case by considering the first interrogatory only and rendering a decision thereon, but as the litigation in reference to this bond and mortgage has extended over a period of twelve years, and different phases of the controversy been argued many times before the court of common pleas ; and as in the present proceeding considerable testimony has been taken and arguments of great length and ingenuity made before the master, he has deemed it a part of his duty to consider directly the several questions above presented in the light of all the testimony, oral and record, which has been submitted to him, and to present his conclusions thereon, endeavoring by so doing to assist in the termination of litigation which has already become very complicated, and which, if continued, will inevitably exhaust the amount of money involved.

" A careful reading of the testimony establishes conclusively that a partial purpose of procuring a loan upon the bond and

ESTATES OF LAWRENCE et al. LOAN ASSN.'S APP. 199

1895.]                         Master's Report.

mortgage which was given in this case was to return to Ann Appleton, the cestui que trust of George W. Appleton and Henry Pomerene, the sum of $1,500, which she had advanced for the purpose of paying off a mortgage of $1,500 that existed against the property No. 221 Arch street.

"When Ann Appleton took an interest in that property under the will of her father, John Lawrence, she took it, so far as the evidence shows, subject to a mortgage of $1,500. During her enjoyment of the estate under her father's will that mortgage matured. It became necessary to pay it off, and, in order to protect the estate, Ann Appleton paid the mortgage.

"In the application of the 8th of October, 1870, to the orphans' court, by George W. Appleton and Henry Pomerene, for permission to raise a sum not exceeding $5,000 upon bond and mortgage upon the premises No. 221 Arch street, it was stated that one of the objects to which a portion of this sum would be devoted would be the return of the $1,500 so advanced, the balance to be applied to the alteration and enlargement of premises belonging to said trust estate on Second street, between Market and Chestnut streets.

"The court granted the petition. In pursuance of the authority so conferred, a bond and mortgage in the sum of $5,000 were executed by the said trustees upon the premises in question, and was given to the Odd Fellows' Building and Loan Association.

"Almost contemporaneously with the giving of the bond and mortgage George W. Appleton became a subscriber to shares of stock in said association, and within a short time thereafter received from said association loans made to him in his own name aggregating $10,000. A part of the security given for such loans, with the shares of stock held by him, which were assigned to the association, was the bond and mortgage. It cannot be doubted that a portion of the loans amounting to over $4,000 were made directly upon the security of the said bond and mortgage. No shares, however, in said association were taken by George W. Appleton as trustee. In the succeeding years these loans were reduced, but it is not clearly shown that they were ever entirely paid off, while said bond and mortgage continued to be held by said association as security. In 1884, a settlement having been agreed upon between George

200 ESTATES OF LAWRENCE et al. LOAN ASSN.'S APP.

Master's Report.                              [169 Pa.

W. Appleton and the said association, the bond and mortgage were assigned to the Mutual Savings, Loan and Building Association of Haddonfield, for the sum of $2,000. The latter thereupon became the owner of the same, and it is by virtue of that assignment and ownership that the execution, against which the injunction in this case was obtained, was issued.

"When a trustee is charged with the commission of a fraud or a misappropriation of trust funds the accusation must be satisfactorily proved.

"Now at about the time that George W. Appleton gave the bond and mortgage in question to the association he received over $4,000 upon it. What was done with this money? There is not a line of evidence which indicates that the $1,500, which had been advanced by Ann Appleton in satisfaction of the mortgage previously existing on the premises No. 221 Arch street, was not returned to her. There is no competent evidence that a portion or the whole of the balance borrowed from the said association on said bond and mortgage was not applied for the purposes indicated in the decree of the orphans' court. It is shown in a vague and indistinct way that George W. Appleton and a brother Samuel Appleton were in 1872 engaged in a land speculation in New Jersey, in which they invested money; but the amount of that investment, the exact location of it, and the specific sources from which the funds that they invested were derived, remain unestablished in every particular.

"The testimony of Samuel Appleton on the point is hesitating, indefinite and valueless. It would be the grossest injustice to the memory of George W. Appleton to hold him guilty of having misappropriated the balance of the fund received on said bond and mortgage upon the statements of his brother, Samuel Appleton, which are enveloped in an impenetrable mist of uncertainty.

"Nor was any other more convincing testimony produced for the purpose of establishing such misappropriation.

"We must therefore conclude, whatever inferences may be drawn from the mere irregularity that appears in the execution of the bond and mortgage as to the forms of the instruments, or as to the signatures of the trustees, of a disadvantageous character to George W. Appleton, that what ought to have been done in reference to the use of the money received by him

ESTATES OF LAWRENCE et al. LOAN ASSN.'S APP. 201

1895.]                        Master's Report.

was done. We must be governed by the legal presumptions which arise in the absence of adequate testimony to show the specific act of misappropriation. All that was done, too, in connection with this mortgage was done in the lifetime of the cestui que trust, the mother of George W. Appleton. No objections appear to have been raised by her as to the conduct of her son, and the presumption, in the absence of contrary proof, must be that the balance now due on the bond and mortgage was expended in accordance with the decree of the orphans' court. No other conclusion can be reached on the facts which have been presented. We must hold that the principal sum of $2,000 remaining due on the bond and mortgage that was assigned to the Mutual Savings, Loan and Building Association was used for the benefit of the estate of Ann Appleton, the cestui que trust of Henry Pomerene and George W. Appleton, trustees.

" This is an appeal to the equitable powers of this court. The object of equitable interference is never to work injustice to any one. It balances the conflicting claims of the parties, and secures to each his rights. It never avails itself of technicalities to work oppression. To decree an instrument to be delivered up to be canceled is a matter in the sound discretion of the court, and the power should not be exercised except in a very clear case: Stewart's App., 78 Pa. 88.

" No chancellor would direct the cancellation of a deed imperfectly executed between a grantor and a grantee, and decree that the property embraced in the grant should be restored to the grantor, and that he at the same time should keep the consideration money.

" This illustration indicates the principle that should govern here. The trust estate of Ann Appleton, having received the $2,000 secured by the bond and mortgage, the subject of this proceeding, that bond and mortgage having been executed under a valid decree of this court, the circumstance that the mere word 'trustee' was not appended to the names of George W. Appleton and Henry Pomerene in the execution of the instrument did not invalidate them or prevent the mortgage constituting a lien upon the property No. 221 Arch street. So far as the building association was concerned, it was empowered to loan upon security of this character, whether the borrower were

202 ESTATES OF LAWRENCE et al. LOAN ASSN.'S APP.

Master's Report. [169 Pa.

a trustee or acting for himself, and whether he had one or fifty shares of stock in the association. So far as the trustees were concerned, the act of assembly does not require any specific form of bond and mortgage to be executed, and though the form used in this particular case is not in general use, the departure from the form ordinarily adopted did not make the execution of a power conferred by the decree invalid. The security that was entered took the place, too, of the fund which was realized. The object of giving the security after the decree has been made is for the purpose of guarding against errors which may exist in the proceedings. The method of making the bond and mortgage, and the manner of executing them, constitute no defense to the surety whose bond was entered, nor do they constitute any defense to the estate that enjoyed the proceeds realized upon the bond and mortgage which were given, and on which a balance of $2,000 still remains unpaid.

" In the body of the bond and of the mortgage the office of the grantors as trustees is shown, and the covenants are made by them as trustees, and not individually. The intention of the parties is shown in the very testimony of Henry Pomerene. It was to execute these instruments as trustees. The liability of the trust estate on these instruments is not to be abridged because of the circumstance that, through neglect or accident, the mere title of the fiduciary office was not appended to the names of the executing parties. The purpose of the instrument having been declared, the fund having been realized therefrom, and the estate having enjoyed the same, the estate has no right to require their cancellation or surrender until it has returned the money borrowed and used thereon.

" Nor should the orphans' court act without hesitation upon a subject previously considered several times upon argument, before the court of common pleas, wherein a formal judgment after trial has been rendered.

" In a court of practically co-ordinate jurisdiction the ingenuity of counsel on behalf of the petitioner was again and again exerted to destroy the effect of the original judgment entered on the bond in controversy. The issue that was finally submitted to the verdict of the jury was, ' Whether George W. Appleton and Henry Pomerene, trustees, etc., the obligors of the bond in suit, fraudulently misappropriated the money therein,

ESTATES OF LAWRENCE et al.   LOAN ASSN.'S APP. 203

1895.]          Master's Report—Decree of Court below.

and whether the Odd Fellows' Building and Loan Association of Camden, N. J., knew at the time it loaned its money on the bond that the said money was to be misappropriated.'

" The decision of that tribunal, everything being considered, should be treated by this court as conclusive upon both of the questions embraced in the issue stated.   And the facts further show that the Mutual Loan, Savings and Building Association was an innocent purchaser for value of the mortgage in question.   There is no fact shown which goes to impugn the good faith of the successive parties who have been the owners of this mortgage, and the specific finding of the jury in the court of common pleas was that the trustees, George W. Appleton and Henry Pomerene, had not fraudulently misappropriated the money obtained on the bond in suit.

" The conclusions of the master, upon a careful estimate of the evidence which has been presented before him in the proceeding in this court, are directly confirmatory of the conclusion which was reached by the jury in the court of common pleas.

" For the purpose of the proceeding in equity before this court the bond and mortgage are to be considered as standing upon the same footing.

" While trustees, if objection were made in time, might not be permitted by the orphans' court to carry out a decree authorizing the borrowing of money upon bond and mortgage in the manner adopted, and a building association with the right to impose fines or receive premiums is evidently not the intended source from which trustees should borrow money, still this loan was consummated twenty years ago.   The payment of the balance due on the mortgage will wrong no one.   The questions involved have been sufficiently dealt with in another court, and there is no just reason for the intervention of this, and the injunction should therefore be dismissed."

On exceptions the court below set aside the report of the master, and entered the following decree :

" And now this 12th day of May, 1894, this cause having been heard upon exceptions to the master's report, filed on behalf of the Union Trust Company, trustee under the trust declared in the will of Ann Appleton, the court sustain the said exceptions and reverse the findings and award of the master, and the court do now declare and adjudge that the mortgage

204 ESTATES OF LAWRENCE et al. LOAN ASSN.'S APP.

Decree of Court below—Arguments. [169 Pa.

made the twenty-fourth day of February, 1872, by George W. Appleton and Henry Pomerene, trustees under the will of John Lawrence, deceased, to 'Odd Fellows Building and Loan Association of Camden, New Jersey,' upon a certain lot or piece of ground and messuage situated on the north side of Arch street, between Second and Third streets in the city of Philadelphia, to secure the sum of five thousand (5,000) dollars, and recorded in the office of the recorder of deeds for the county of Philadelphia in Mortgage Book J. A. H. No. 206, p. 1, etc., afterward assigned by the said association to 'The Mutual Loan, Savings and Building Association of Haddonfield, New Jersey,' is fully paid off and satisfied, and it is further ordered and decreed that 'The Mutual Loan, Savings and Building Association of Haddonfield, N. J.,' be restrained perpetually from making or maintaining any levy upon and from making or declaring any sale of the said premises belonging to the trust estate aforesaid. The said, 'The Mutual Loan, Savings and Building Association of Haddonfield, N. J.,' their attorneys, agents, servants and employees abstain from causing a service of any further execution upon the judgment entered on the bond in the court of common pleas No. 2 as of June term, 1881, No. 438, against the said mortgaged premises, and that the said association forthwith enter satisfaction of record upon the said mortgage of record in the office of the said recorder of deeds."

*Error assigned* was entering above decree.

*B. Frank Clapp* and *William W. Wiltbank*, for appellants.— The court of common pleas was sitting as a court of equity: Cochran v. Eldridge, 49 Pa. 365. The adjudication was final and conclusive until reversed by a higher court: Savage v. Kelly, 32 Leg. Int. 5; Brooke et al. v. Phillips, 24 Leg. Int. 132; Dyer's Appeal, 3 Grant, 326; Lorenz, Administrator, et al., v. Wightman et al., 44 Pa. 27; McLane's Executors v. Wade, 53 Pa. 146. Where two courts have concurrent jurisdiction, the jurisdiction of that court which first attaches is exclusive: Fallon v. Remington et al., 10 W. N. C. 119; Loomis v. Loomis, 27 Pa. 233. Where the trustees entered security in the orphans' court the mortgagee was not bound to see to the application of the money: Act of April 18, 1856, section 6, P.

ESTATES OF LAWRENCE et al. LOAN ASSN.'S APP. 205

1895.]                    Arguments.

L. 503; Dixcy's Executors v. Laning and Sill, 49 Pa. 143; Hart et al. v. Farmers' and Mechanics' Bank et al., 33 Vt. 252; 2 White & Tudor's Leading Cases in Equity, 58; 1 Hilliard on Mortgages, p. 535, pl. 67; Story's Eq. sec. 977, A, 434, 435 and 436; McMurray v. Moran, 134 U. S. 150; Pilcher v. Rawlings, 7 L. R. Ch. App. 259; Kellogg, Assignee, etc., v. Krauser, 14 S. & R. 137; Bellas v. McCarty, 10 W. 29; Mott v. Clark, 9 Pa. 403, 405; Pryor v. Wood, et al., 31 Pa. 142, McMasters v. Wilhelm, 85 Pa. 218; Mellon's App., 96 Pa. 475; Sweetzer v. Atterbury, 100 Pa. 18; Bigley v. Jones, 44 Leg. Int. 403; Olds v. Cummings et al., 31 Ill. 188. The court of common pleas had as ample powers for relief as the orphans' court: Walker v. Dement, 42 Ill. 272; Stockdale v. Ullery, 37 Pa. 486; Wistar v. McManes, 54 Pa. 318; O'Hara v. Stack, 90 Pa. 491; Reeser v. Johnson, 76 Pa. 313; Smith v. Bunting, 86 Pa. 116; Weigley v. Conrade, 132 Pa. 147.

*E. Spencer Miller* and *J. Howard Gendell*, for appellees.—The court of common pleas did not conclude the question whether the mortgage was a valid lien by entering a judgment on the bond: Grier v. Huston, 8 S. & R. 402; Beeson v. McNabb, 2 Pa. 422; Solliday v. Bissey, 12 Pa. 347; Story on Agency, sec. 148 etc.; Bellas v. Hays, 5 S. & R. 427; Quigley v. DeHaas, 82 Pa. 267; Forcey's App., 106 Pa. 508; Phila. & Sunbury R. R. Co. v. Lewis, 33 Pa. 33; Stroud's App., 109 Pa. 326; Curtis v. Slosson, 6 Pa. 265. The orphans' court had jurisdiction to declare the mortgage not a valid lien: Watts's Est., 158 Pa. 1; Mulholland's Est., 154 Pa. 491; Miskimins' App., 114 Pa. 530; Marshall's Est., 138 Pa. 285; Odd Fellows' Savings Bank's App., 123 Pa. 357; Brooke's App., 102 Pa. 150; Klein's Est., 11 W. N. C. 354; Hunter's App., 40 Pa. 194; Houston, Smith & Co.'s App., 6 W. N. C. 162; 1 Story's Eq., secs. 705, 706; Kenton v. Vandegrift, 42 Pa. 339; Duquesne Bank's App., 74 Pa. 426; Brewer's App., 104 Pa. 417; Biddle v. Lewis, 15 W. N. C. 379. No new positive validity was given in the mortgage by assignment to the appellant: Faull et al. v. Tinsman, 36 Pa. 108. The mortgage was not a lien before assignment: Tyrrell L. & B. Assn. v. Haley, 139 Pa. 476; Mitchell v. Coombs, 96 Pa. 430; Loverin v. Trust Co., 113 Pa. 6; Kinley v. Hill, 4 W. & S. 426; Bank v. Burns, 87 Pa. 491;

206 ESTATES OF LAWRENCE et al. LOAN ASSN.'S APP.

Arguments—Opinion of the Court.        [169 Pa.

Cooley's App., 1 Grant, 401; Anderson v. Neff, 11 S. & R. 218; Waters v. Largy, 5 R. 131; Loverin v. Humboldt Co., 113 Pa. 6; Mullison's Est., 68 Pa. 212; Wolbach v. Bldg. Assn., 84 Pa. 211; Building Assn. v. Rice, 8 W. N. C. 12; Torrance v. Torrance, 53 Pa. 505.

OPINION BY MR. JUSTICE GREEN, July 18, 1895:

After a laborious investigation of this record we find ourselves unable to agree with the learned court below. The whole subject-matter of the controversy had really been heard, considered and decided by the court of common pleas No. 2 of Philadelphia, which undoubtedly had jurisdiction to decide everything at issue, before the present petition was filed in the orphans' court. It is fully conceded by the learned court below that so far as the alleged misappropriation of the fund by the trustees was concerned, the preceding trial in the common pleas was conclusive, but in considering the question whether the appellant as purchaser of the bond and mortgage took a good title, the court held that the transaction must be regarded, as between the trustee who negotiated it and the present holder, as a loan to the trustee not in his official capacity but as an individual. The court further held that the trust debt, which the money was given to secure, was paid by the trustee before the assignment, and if the appellant had inquired of the mortgagee this fact would have been discovered. This fact, of the payment of the debt, had been before the common pleas several times and had been there disposed of. The same allegation was made in the original petition to the common pleas quite as fully and as positively as it is made in the present petition, but after the taking of all the testimony the parties had to offer and a full hearing had upon the merits of that petition, the court of common pleas declined to grant an issue on the question of payment, but restricted the issues granted, to the question of misappropriation, and the knowledge of that fact on the part of the Odd Fellows' Building and Loan Association of Camden, the original mortgagee and lender of the money. On the trial of that case the court of common pleas in charging the jury said, referring to the application to open the judgment: " When that application was heard all questions of whether there had been a payment of this mortgage or as to the power to

ESTATES OF LAWRENCE et al.  LOAN ASSN.'S APP. 207

1895.]                Opinion of the Court.

create it, were disposed of by the court.  There is but one single question and that is this : whether the money received upon this mortgage was misappropriated by the trustees or whether the parties who loaned it knew at the time they loaned it that it was going to be misappropriated." If there was error on that trial the remedy was by appeal to this court, but none was ever taken.  A motion for a new trial was made and depositions were again taken but the court refused the motion.  When the present petition was exhibited to the orphans' court a master was appointed who heard the parties and all their testimony upon all the allegations contained in the petition, including that of payment, but the master reported that the debt had not been paid and was still subsisting and belonged to the present appellant.  He therefore recommended a dismissal of the petition. Now when the learned court below held that.the debt was paid before the assignment, we do not understand that they so held upon specific proof of the fact of payment, but by way of inference from the fact that other moneys had been loaned to one of the trustees, and that upon the adjustment of accounts between the trustee and the association from which the money was borrowed, the trustee was entitled to have it adjudged that the debt was paid.  We do not understand the court to say that there ever was such an adjustment, or, that in point of fact, this debt was ever paid.  Now the master had all this matter before him.  He had the witnesses whose testimony he heard and considered, also the books of the association and the proper officers to explain them and the entries contained therein.  He made a full report upon this part of the case stating and reviewing the testimony and the questions before him.  He reports that there were moneys of considerable amount loaned to George W. Appleton, one of the trustees, upon the security of this bond and mortgage but that his name only appeared upon their books as an individual ; " That these loans were subsequently reduced considerably in amount but it does not appear by the books of the association that any final settlement was ever made with George W. Appleton, by which it was agreed between the association and himself that the amount of money loaned upon said bond and mortgage of $5,000 had been fully paid." He further found that while Appleton had repaid a considerable portion of the money borrowed, he was still in 1880 " indebted

208 ESTATES OF LAWRENCE et al. LOAN ASSN.'S APP.

Opinion of the Court.                    [169 Pa.

in a considerable sum to the association which they pressed him to pay," and to enforce the payment they entered up judgment on the bond at June term 1881, against both the trustees. The master further finds that there is no evidence to show that at least $1,500 of the money borrowed was not paid to Ann Appleton to reimburse her for the money she had paid to remove the old incumbrance and other money to improve the other trust property; that the money was borrowed for those purposes and no complaint was made by the parties interested that it had not been paid and he concludes as a fact that it was so paid. He also finds that on Jan. 25, 1884, the appellant purchased and took an assignment of the bond and mortgage in question for $2,000, which sum it was agreed by the Odd Fellows' Building and Loan Association and George W. Appleton "was at that time owing the said association upon said security." He further finds that the assignment was made with the approval of George W. Appleton without any knowledge on the part of the assignee, this appellant, that there had been any defense made to the mortgage, or that there was any claim made by any one that the securities were not valid and binding; that the check for the $2,000 was made by the assignee directly to the assignor and that no direct loan was made by the assignee to George W. Appleton, and that the appellant was a direct purchaser of the mortgage for $2,000 with the understanding that they claimed no interest beyond that amount in the bond and mortgage. The master then states three questions arising for consideration, the first one of which was, whether the estate of Ann Appleton is indebted in the principal sum of $2,000 on the bond and mortgage held by the Mutual Loan, Savings and Building Association, etc., or in other words, did that estate "ever receive that amount of money upon loan secured by the said bond and mortgage which sum still remains unpaid." The master then proceeds to review the proceedings and the testimony. He reports that, "a careful reading of the testimony establishes conclusively that a partial purpose of procuring a loan upon the bond and mortgage which was given in this case, was to return to Ann Appleton, the cestui que trust of George W. Appleton and Henry Pomerene, the sum of $1,500 which she had advanced for the purpose of paying off a mortgage of $1,500 that existed against the property No. 221 Arch street." After

ESTATES OF LAWRENCE et al. LOAN ASSN.'S APP. 209

1895.]                    Opinion of the Court.

reciting that Appleton became a subscriber to the shares of stock in the association which lent the money, and borrowed money to the extent of $10,000, he adds, "it cannot be doubted that a portion of the loans amounting to over $4,000 were made directly upon the security of the said bond and mortgage. . . . In the succeeding years these loans were reduced, but it is not clearly shown that they were ever entirely paid off while the said bond and mortgage continued to be held by the said association as security. In 1884, a settlement having been agreed upon between George W. Appleton and the said association, the bond and mortgage were assigned to the Mutual Loan, Savings and Building Association of Haddington for the sum of $2,000. The latter thereupon became the owner of the same." He then holds that there is nothing in the testimony which indicates that Ann Appleton did not receive the $1,500 which she had advanced to clear off the old lien, and closes that part of the report as follows, " we must hold that the principal sum of $2,000 is remaining due on the bond and mortgage that was assigned to the Mutual Loan, Savings and Building Association so used for the benefit of the estate of Ann Appleton, the cestui que trust of Henry Pomerene and George W. Appleton trustees." He then considers the contention that because the bond and mortgage were signed with the individual names of the trustees without adding their official title, they must be regarded as only individual obligations; and very properly holds that this position is altogether untenable and concludes thus, " the method of making the bond and mortgage, and the manner of executing it constitute no defense to the surety whose bond was entered, nor does it constitute any defense to the estate that enjoyed the proceeds realized upon the bond and mortgage which were given and on which a balance of $2,000 still remains unpaid." And again, " the purpose of the instrument having been declared, the fund having been realized therefrom and the estate having enjoyed the same, the estate has no right to require their cancellation or surrender until it has returned the money borrowed and used thereon."

All this is absolutely correct, and the finding that the money is still due effectually disposes of all the technical contentions as to the liability of the estate to repay the money. We think the evidence fully sustains the master in his conclusions and in

210 ESTATES OF LAWRENCE et al. LOAN ASSN.'S APP.

Opinion of the Court. [169 Pa.

any event we think the testimony entirely fails to show a case in which a chancellor should order the cancellation and surrender of a solemnly executed mortgage and bond. The assignments of error are all sustained.

The decree of the court below is reversed and it is now ordered and decreed that the petition and all proceedings thereunder be dismissed and injunction dissolved at the cost of the petitioner.